UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE METROPOLITAN OPERA,<br><br>　　　　　　　　　　Plaintiff,<br><br>-against-<br><br>WEC INTERNATIONAL LLC, ITALIAN MUSIC CENTER, INC. d/b/a WORLD ENTERTAINMENT COMPANY, and GIORGIO BARBOLINI,<br><br>　　　　　　　　　　Defendants. | Civil Action No. _____<br><br>**COMPLAINT** |

Plaintiff, The Metropolitan Opera Association, Inc. (the "Met"), by its attorneys, Proskauer Rose LLP, alleges as follows:

## NATURE OF THE ACTION

1. This action against defendants WEC International LLC ("WEC" or "Licensee"), Italian Music Center Inc. d/b/a World Entertainment Company ("World Entertainment Company" or "Guarantor") and Giorgio Barbolini ("Barbolini"), president of both Licensee and Guarantor (together, "Defendants") arises from Licensee's failure to timely pay a license fee to the Met for its agreed-to use of the Metropolitan Opera House (the "Opera House"), located at Lincoln Center, New York, New York, pursuant to a license agreement dated July 19, 2019 (the "License Agreement"). Licensee's failure to pay the license fee constitutes a material breach of the License Agreement.

2. Pursuant to Exhibit D to the License Agreement, Guarantor agreed to serve as the guarantor for, among other things, the license fee payable by Licensee (the "Guaranty").

3. Barbolini, president of both Licensee and Guarantor, signed both the License Agreement and the Guaranty. Barbolini represented to the Met that Licensee had sufficient

funds available to pay the License Fee in the event Licensee was unable to secure certain third-party funding. The Met relied on Barbolini's representations when it entered into the License Agreement with Licensee and Guarantor.

4. In the License Agreement, the Met agreed to license the use of the Opera House to Licensee for the purpose of presenting up to six events, such as concerts by world-famous artists, during specified weeks in the years 2021-2023.

5. In exchange, among other things, Licensee agreed to pay the Met a license fee totaling $9,600,000, scheduled to be paid in four installments, with an initial payment of $5,000,000 due on August 22, 2019.

6. Licensee and Guarantor further agreed to indemnify the Met for its costs and expenses arising from any breach of the agreement, including reasonable attorney's fees.

7. As of this date, Licensee has yet to make the initial $5,000,000 payment and is, therefore, in material breach of the License Agreement.

8. Based on this material breach, the Met has terminated the License Agreement.

9. Accordingly, the Met is entitled to immediate payment from Licensee, Guarantor and/or Barbolini in the amount of $9,600,000, plus any costs and expenses, including its reasonable attorney's fees in connection with bringing this action and any statutory interest thereon from the dates incurred, and all other and further relief to which they are entitled.

**PARTIES**

10. Plaintiff, the Met, is a New York State not-for-profit corporation having its principal place of business at Lincoln Center, New York, New York 10023.

11. Defendant WEC is a Delaware corporation residing at 8 The Green, Suite A, Dover, Delaware 19901.

12. Upon information and belief, Defendant World Entertainment Company is a Delaware corporation registered at 2140 South Dupont Highway, Camden, County of Kent, Delaware 19934.

13. Upon information and belief, defendant Barbolini is the president of both WEC and World Entertainment Company and resides in Italy.

## JURISDICTION

14. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there exists complete diversity between the parties and the amount in controversy exceeds the sum of $75,000. In addition, Licensee has consented to the jurisdiction of this Court pursuant to paragraph 24 of the License Agreement and Guarantor has consented to the jurisdiction of this Court pursuant to Exhibit D of that same agreement.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district and the parties agreed to venue in federal court in New York, New York.

## FACTUAL ALLEGATIONS

**A.  The License Agreement**

16. The Met controls the use of the world-renowned Metropolitan Opera House, which hosts performances of the world's most important artists and operas.

17. In July 2019, the Met and Licensee negotiated the License Agreement, pursuant to which Licensee would license the use of the Opera House for the purpose of presenting events such as world-famous artists' concerts at the Opera House.

18. In exchange for the use of the Opera House, among other consideration, Licensee was to pay a license fee to the Met.

19.     On July 19, 2019, the Met and Licensee executed the License Agreement[1] (a copy of which is attached as Exhibit A), pursuant to which Licensee was to present up to six events by artists approved by the Met during six separate weeks in 2021-2023 as specified in the License Agreement.

20.     Pursuant to Paragraph 2 of the License Agreement, Licensee was to pay a License Fee in the total amount of $9,600,000 with the first payment of $5,000,000 due on August 22, 2019. Specifically, the License Agreement provides that the License Fee is payable as follows:

> (a) Five Million Dollars ($5,000,000) on or before August 22, 2019 as an advance against the License Fee, and
>
> (b) The remaining Four Million Six Hundred Thousand Dollars ($4,600,000) is payable One Million Four Hundred Thousand Dollars ($1,400,000) on or before January 30, 2021, and Three Million Two Hundred Thousand Dollars ($3,200,000) on or before January 28, 2022.

(Exhibit A, ¶¶ 2(a) and (b).)

21.     In two separate paragraphs, the License Agreement clearly states that failure to pay the License Fee in accordance with the above schedule shall constitute a material breach of the License Agreement. First, Paragraph 2(c) provides in part:

> Failure to make any such payment when due shall constitute a default that, unless cured by Licensee within three business days of notice thereof, shall constitute a material breach of this Agreement.

(*Id.* ¶ 2(c).) Further, Paragraph 20 states that a "material breach" "shall include [in the case of the Licensee], without limitation, its failure to pay any material portion of the compensation when due." (*Id.* ¶ 20.)

22.     Paragraph 20 further provides, in part:

---

[1] Capitalized terms herein not otherwise defined shall have the meaning ascribed to them in the License Agreement.

> If any party commits a material breach any of its material obligations hereunder (the "Defaulting Party") (which in the case of Licensee shall include, without limitation, its failure to pay any material portion of the compensation when due) ("Event of Default") and, if curable, such Event of Default is not cured within five business days after receipt by the Defaulting Party of written notice thereof, then the other party may terminate this Agreement by giving written notice thereof to the Defaulting Party. The right to terminate this Agreement shall be in addition to and not in lieu of any other remedies available in law or equity. In the event of a termination by the Met, the Met shall be entitled to retain all sums paid, and shall be entitled to immediate payment of all sums remaining due, including, without limitation, reimbursement for expenses incurred in connection with this Agreement.

(*Id.* ¶ 20.)

23.  Licensee further provided an indemnification for the benefit of the Met (the "Indemnification"). The Indemnification includes any costs and expenses, including reasonable outside attorney's fees, in connection with any alleged breach of the License Agreement. Paragraph 19 states in part:

> To the fullest extent permitted by law, Licensee shall defend, indemnify and hold the Met, Lincoln Center for the Performing Arts, Inc. and their respective officers, directors, employees and agents (collectively, the "Met Parties") harmless from and against (and shall pay the full amount of) any and all fines, penalties, costs and expenses, including, without limitation, reasonable, outside attorney's fees and disbursements and other litigation, administrative proceeding and settlement expenses (all of the foregoing "Claims"), arising out of, resulting from or in connection with any alleged breach of this Agreement . . .

(*Id.* ¶ 19.)

24.  Exhibit D to the License Agreement is a separate agreement signed by Guarantor as "material inducement" for the Met to enter into the License Agreement. Under that agreement, Guarantor agreed to take on all of the obligations of Licensee under the License Agreement (the "Guaranty"). Under the Guaranty, Guarantor "guarantees the full and timely

5

performance of all obligations, including financial and payment obligations by Licensee under the License Agreement[.]" (*Id.*, Ex. D.) Specifically, the second paragraph of the Guaranty states:

> Without limitation of the above and notwithstanding anything to the contrary, Guarantor agrees that the guaranty includes the obligations of Licensee under the License Agreement to pay the License Fee and all Payroll Costs, as well as other financial obligations as noted therein.

(*Id.*)

25. In the Guaranty, Guarantor also agreed to pay the Met's costs and expenses, including any reasonable attorney's fees, in connection with Licensee's breach of the License Agreement (the "Guarantor Indemnity"). The third paragraph of the Guaranty states, in part:

> Guarantor agrees to pay to the Met all losses, costs, attorney's fees and expenses the Met may incur as a result of Licensee's failure to meet its financial obligations under the License Agreement and Guarantor's failure to meet its obligations hereunder.

(*Id.*)

26. During the negotiation of the License Agreement and the Guaranty, Licensee told the Met that it was attempting to secure financing for the License Fee from a third-party funding source. The Met insisted, in writing, that the License Agreement not be contingent upon Licensee's ability to secure that third-party financing. Licensee agreed, and the License Agreement reflects that agreement not to have any financing contingency.

27. In a telephone call and a subsequent email on July 19, 2019, Marco Marchesi Marselli, then an employee of Licensee, based on information from Barbolini (who was with Marselli during the phone call and was copied on Marselli's email), told the Met that Licensee had sufficient funds available to meet its obligations under the License Agreement.

28. Later on July 19, 2019, following Defendants' false representations regarding Licensee's ability to perform under the License Agreement, the parties executed the License Agreement.

29. The Met relied upon Defendants' assurance that Licensee would be able to pay the License Fee regardless of whether Licensee was able to obtain any additional third-party funding.

30. Among other steps in reliance on the assurances of Licensee's ability to make payments under the License Agreement, the Met did not pursue negotiations with other potential licensors to present events at the Opera House.

**B.    Licensee Breaches the License Agreement; Termination Following Failure to Cure Breach**

31. On August 21, 2019, Licensee informed the Met by email that it would not meet the August 22 deadline by which the initial $5,000,000 payment was due.

32. Reserving all of its rights, the Met responded that it would grant Licensee a one-week extension – until August 29, 2019 – to make the initial payment, provided that Licensee make a $500,000 deposit by the close of business on August 23.

33. However, on August 22, Licensee responded that it would neither meet the August 22 deadline with respect to the initial $5,000,000 portion of the License Fee nor the August 23 deadline for the proposed good faith deposit. Indeed, Licensee wrote by email "I'm not able at this moment to provide you a secure date of when we will be able to fulfill the agreement."

34. In a written communication on August 23, the Met placed WEC on notice that it was in breach of the License Agreement due to its failure to remit the initial $5,000,000 portion of the License Fee.

7

35. As of this date, the Met has not received the initial $5,000,000 portion of the License Fee from either Licensee or Guarantor, and all applicable cure periods have expired.

36. By letter dated and delivered to Licensee on October 16, 2019, the Met terminated the License Agreement (a copy of the letter terminating the License Agreement is attached as Exhibit B).

## FIRST CAUSE OF ACTION
### (Breach of Contract)

37. The Met repeats and re-alleges the allegations of Paragraphs 1 through 36 as if fully set forth herein.

38. The Met and Licensee entered into the License Agreement which obligates Licensee to pay a $9,600,000 License Fee, of which an initial payment of $5,000,000 was due on August 22, 2019.

39. The Guaranty obligates Guarantor to pay the License Fee in the event Licensee fails to make the timely payments.

40. As of this date, the Met has not received any portion of the License Fee from either Licensee or Guarantor and all dates by which Licensee had the option to cure its default have now passed.

41. Pursuant to the License Agreement, the Met is entitled to collect the full amount of the $9,600,000 License fee and its costs and expenses, including reasonable outside attorney's fees, in connection with bringing this action.

42. Therefore, the Met demands judgment in its favor as against Licensee, Guarantor and/or Barbolini in the amount of $9,600,000, plus statutory interest on all such amounts from when first incurred, plus its attorney's fees and costs of this action, plus any and all further relief as this Court determines to be just and proper.

## SECOND CAUSE OF ACTION
### (Contractual Indemnification)

43. The Met repeats and re-alleges the allegations of Paragraphs 1 through 42 as if fully set forth herein.

44. The Met and Licensee entered into the License Agreement, which contains the Indemnification.

45. Guarantor signed the Guaranty which contains the Guarantor Indemnification.

46. The License Agreement, Indemnification and the Guarantor Indemnification are binding and enforceable.

47. The Indemnification and the Guarantor Indemnification runs to the benefit of the Met.

48. Licensee breached the License Agreement by failing to pay the initial $5,000,000 portion of the License Fee by the date prescribed by the License Agreement and failed to timely cure its breach.

49. Licensee's breach has triggered Licensee's obligation under the Indemnification and the Guarantor's obligation under the Guarantor Indemnification to indemnify the Met with respect to all costs and expenses, including reasonable attorney's fees, arising out of Licensee's breach.

50. Therefore, Licensee and/or Guarantor are to pay the Met all such amounts, including but not limited to the amounts they have incurred and will incur in initiating and continuing with this action.

51. Therefore, the Met demands judgment in its favor as against Licensee in the amount of its costs and expenses, including reasonable attorney's fees, arising out of Licensee's breach to be determined at trial, plus statutory interest on all such amounts from when first

incurred, plus its attorney's fees and costs of this action, plus any and all further relief as this Court determines to be just and proper.

### THIRD CAUSE OF ACTION
### (Fraudulent Inducement)

52. The Met repeats and re-alleges the allegations of Paragraphs 1 through 51 as if fully set forth herein.

53. The Met insisted, in writing, that the License Agreement not be contingent upon Licensee's ability to secure third-party financing.

54. Defendants, through an employee of Licensee speaking for Barbolini, misrepresented to the Met that Licensee and, by implication, Guarantor, could use other funds available to them to perform under the License Agreement and Guaranty regardless of whether they could obtain third-party financing so that the Met would enter into the License Agreement.

55. Indeed, the Guaranty is expressly labeled as a "material inducement" for the Met to enter into the License Agreement.

56. The Met had no way to determine whether Defendants misrepresentations were true and instead relied upon those misrepresentations when it entered into the License Agreement.

57. Defendants knew that Licensee and Guarantor did not have sufficient funds to perform under the License Agreement or Guaranty.

58. The Met reasonably relied upon Defendants' misrepresentations when it entered into the License Agreement and Guaranty.

59. As a result of Defendants' misrepresentation, the Met entered into the License Agreement and Guaranty and did not pursue negotiations with other potential licensors to present events at the Opera House.

## FOURTH CAUSE OF ACTION
**(Fraudulent Misrepresentation)**

60. The Met repeats and re-alleges the allegations of Paragraphs 1 through 59 as if fully set forth herein.

61. Defendants, through an employee of Licensee speaking for Barbolini, misrepresented that Licensee, and by implication Guarantor, could use other funds available to them to perform under the License Agreement and Guaranty regardless of whether they could obtain third-party financing.

62. Defendants knew that misrepresentation was false.

63. That misrepresentation was material and the Met reasonably relied upon Defendants' misrepresentations.

64. As a result of Defendants' misrepresentation, the Met entered into the License Agreement and Guaranty and did not pursue negotiations with other potential licensors to present events at the Opera House.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff respectfully prays for judgment in its favor as against Defendants for:

A. Nine Million Six Hundred Thousand Dollars ($9,600,000);

B. the amount of its costs and expenses, including reasonable attorney's fees, covered by the Indemnification and Guarantor Indemnification as set out in the second cause of action;

C. statutory interest on all amounts from when first incurred;

D. its attorney's fees and costs of this action; and

E. any and all further relief as this Court determines to be just and proper.

Dated: New York, New York
October 18, 2019

                                PROSKAUER ROSE LLP

                                By: _____
                                    Howard Z. Robbins
                                    Alyse F. Stach

                                Eleven Times Square
                                New York, New York 10036
                                (212) 969-3000

                                *Attorneys for Plaintiff*